# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

PATRICIA RICHARDSON,

        Plaintiff,

v.                                                                     CIVIL ACTION NO.  2:09-cv-00447

ACTAVIS TOTOWA, LLC,

        Defendants;

----------------------------------------------------------------

GEORGE ROBINSON,

        Plaintiff,

v.                                                                     CIVIL ACTION NO.  2:09-cv-00441

ACTAVIS GROUP et al. ,

        Defendants;

----------------------------------------------------------------

JEANETTE NEWSOME,

        Plaintiff,

v.                                                                     CIVIL ACTION NO.  2:09-cv-00450

ACTAVIS TOTOWA, LLC,

        Defendants;

------------------------------------------------------------

RENA SMITH,

      Plaintiff,

v.             CIVIL ACTION NO. 2:09-cv-00451

ACTAVIS TOTOWA, LLC,

      Defendants;

------------------------------------------------------------------

GERALDINE PRINCE,

      Plaintiff,

v.             CIVIL ACTION NO. 2:09-cv-00445

ACTAVIS TOTOWA, LLC. et al.,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

  Pending before the court in each of the above styled actions is a motion for Rule 11 sanctions filed by the defendants. [*Richardson* Dckt. 21, *Robinson* Dckt. 21, *Newsome* Dckt. 20, *Smith* Dckt. 21, and *Prince* Dckt.21]. Given that the procedural history is identical in the above actions and that the pre-filing investigation in each was essentially the same I have chosen to address the motions together.

I. Procedural History

  The defendants assert generally that the sanction of dismissal is warranted in each of these civil actions based upon Federal Rule of Civil Procedure 11(b). In particular, they assert

that

> Sanctions up to and including dismissal of the Complaint are warranted under Rule 11 because the factual contention in the Complaint that Digitek® caused the [injury or death] of [the plaintiff] has no evidentiary support. A reasonable prefiling investigation of a pharmaceutical claim includes, at a minimum, an examination of reasonably available medical records. In this case, no such examination took place as Plaintiff's Counsel was not in possession of any of Plaintiff's medical or pharmacy records when they served Defendants with the Plaintiff Fact Sheet.

(Defs.' Mot. for Sanc. at 1).

On or about September 2, 2009, defendants served Mr. Wood with a discovery request in each of the actions entitled "Defendants' First Requests for Admissions To Plaintiff " seeking responses on the following three matters:

1. Admit that you did not serve Defendants with any of Plaintiff's medical or pharmacy records when you served the Plaintiff Fact Sheet;

2. Admit that you did not have any of Plaintiff's medical or pharmacy records in your possession when you filed the complaint in this case; and,

3. Admit that you did not have any of Plaintiff's medical or pharmacy records in your possession when you served the Defendants with the Plaintiff Fact Sheet on [date].

The plaintiff in each case did not respond to the requests within 30 days as required by Federal Rule of Civil Procedure 36.  Accordingly, each of the points set forth is deemed admitted subject to the exception in Rule 36(b).  Based on the deemed admissions and in accordance with Rule 11(b), the defendants sent Mr. Wood a letter ("Safe Harbor Letter") on November 16, 2009, in each of the separate actions.  It states:

> Pursuant to the safe harbor provision of Rule 11, I am forwarding a Rule 11 Motion which we will file with the Court in 21 days unless you cure the Rule 11 deficiency, which in this particular case would call for a dismissal of the lawsuit.

(Safe Harbor Letter at 1). None of the plaintiffs dismissed their lawsuit as requested in the Safe Harbor Letter. The motion for sanctions in each case followed.

The court received in each case an untimely memorandum from Mr. Wood in opposition to the motion for sanctions. The filing, which was nearly identical in each case, states in pertinent part:

> This action seeks damages for the physical injuries associated with the ingestion of significantly higher levels of digoxin as well as economic damages for the purchase of drugs which were materially different from those advertised, promoted and prescribed.
>
> . . .
>
> The only factual record upon which defendants' motion is based is plaintiff's failure to respond to the ... three Requests for Admission and therefore the fact that they are deemed admitted[.] The record as presented by the defendants in support of their motion for sanctions is void of any other fact despite their now being in possession of significantly developed plaintiff fact sheets and additional records which have been provided them. They fail to cite any specific fact related to the action at hand and most notably they fail to make any allegation that this action is not meritorious or that this plaintiff was not injured by their conduct.
>
> . . .
>
> The allegation of defendants in [the] instant case is that plaintiff has violated Rule 11, and should be subjected to dismissal of [plaintiff's] action, because [plaintiff's] counsel was not in possession of plaintiff's medical and pharmacy records at the time the complaint was filed. It is important to note that the defendants make no allegation that the allegations in the complaint are not true, that the plaintiff is not injured, or that these records are not in the possession of the [plaintiffs or plaintiff's counsel] at this time. The defendants' proposition is flawed for a number of reasons: first, the imposition of such a bright line rule ignores the fact that a reasonable pre-filing investigation may differ in each case; second, it elevates the factual requirements needed to file a complaint to a level

> much more akin to proceedings later in litigation; and finally, it seeks the ultimate sanction against a party, dismissal of their action, who may have a meritorious claim.
>
> . . .
>
> The defendants make no assertion that there was no pre-filing inquiry, simply that any inquiry made was per se defective because of the absence of certain records. As set forth above, the inquiry in this case consisted of extensive client interviews, factual research into the drug at issue, research into the facts and circumstances of the recall at question, and medical research.
>
> The defendants have failed to question the existence of any pre-trial investigation that occurred other than as to whether the plaintiffs possessed certain records at the time of filing. Obviously the possession of those records is relevant to the inquiry, but cannot be the sole consideration. The defendants will undoubtedly attempt to cast plaintiff's pre-filing inquiry in this case as nothing more than relying upon the word of the client. Even assuming for argument's sake that is this case, there are circumstances where that may be appropriate despite this Court's recognition in PTO 39 that such reliance is seldom enough. Despite defendants' attempts to cast these cases as solely personal injury cases, which they certainly are in part, the fact is that in this particular action there are allegations and claims that the plaintiff was economically injured merely by buying drugs which were improperly manufactured and ultimately recalled. It is hard to know what additional facts would be relevant to the inquiry of pursing this claim other than whether the plaintiff in fact took the drug and whether they were notified that drug was recalled, all of which information is in the possession of the plaintiff. Similarly, the ultimate issue of causation as to the injury claims is will be proven or disproven through expert testimony, but begins by a plaintiff's knowledge that they suffered from certain adverse symptoms while taking a drug.

(Pl.'s Memo. in Oppos. at 1-5).

Mr. Wood also included a personal affidavit detailing the extent of his pre-filing investigation which states:

> Prior to filing the Complaint in this action I and my staff conducted extensive interviews with [plaintiff and plaintiff's family] concerning [plaintiff's] medical and prescription history. During the course of these interviews I was able to ascertain the trustworthiness of the [plaintiff and the family] and [the] level of knowledge concerning the relevant facts of this action.

5

> I am confident that [plaintiff] was truthful and knowledgeable enough include the information [plaintiff] provided me in the Complaint.
>
> Prior to filing the Complaint in this action I was provided answers to all questions I deemed necessary to understand the nature of the allegations.[1]
>
> Prior to filing any complaint concerning the prescription drug Digitek®, I conducted thorough research on the drug and the circumstances of the recall. This research included a review of medical literature, information concerning possible adverse reactions to the use of Digitek® and all recall information.
>
> Prior to filing any complaint concerning the prescription drug Digitek®, I conducted research on the viability of all legal claims I believed to be relevant.

(Aff. of E. Kirk Wood).

In their reply, which again is essentially identical in each case, the defendants assert primarily that PTO 39 concluded that an objectively reasonable pre-filing investigation would include "at a minimum" the review of medical and pharmacy records which would be essential in determining whether the plaintiff would have a colorable claim.[2] They reiterate the point that Mr. Wood did not respond to the Requests for Admission and by virtue of them being deemed admitted it established in each case that he had no pharmacy or medical records in his possession

---

[1] The affidavit in the *Smith* case also included a statement that Mr. Wood had been provided and reviewed information and materials relative to Mr. Smith's death and medical care that further supported the filing of the Complaint.

[2] This conclusion appears based upon the defendants' reading and characterization of PTO 39. PTO 39 provides pertinently as follows:

> Based upon the allegations contained in the complaints, a prefiling investigation without first obtaining medical and pharmacy records would be reasonable only in an extremely limited set of circumstances. The records would be essential in determining whether the plaintiffs have a colorable claim.

(PTO 39 at 13). The ruling leaves room for those cases in which a prefiling investigation short of obtaining pharmacy or medical records might still be deemed reasonable. Each prefiling investigation must be considered on an individual basis.

when the complaint was filed or when the PFS was served.   They assert that without those records Mr. Wood had no evidentiary support at the time he filed the suits as to the allegations that the plaintiffs' Digitek contained an elevated dosage of digoxin or that the plaintiffs suffered digoxin toxicity.

On March 30, 2010, I conducted a hearing to put Mr. Wood to further proof as to what constituted his good faith basis for filing these actions given that the explanations in his opposition memorandum were somewhat conclusory and in my opinion lacked sufficient detail. At the hearing Mr. Wood was directed to elaborate on the pretrial investigation which he undertook prior to the complaint being filed in each case.  He responded as to what generally took place in each case and answered questions as necessary as to individual cases.  Based on his testimony and written supplementation allowed by the court following the hearing, the following points were established: 1) prior to filing any claims Mr. Wood conferred with an independent medical professional as to the nature of Digitek, the recall, the implications of over-strength prescriptions on heart patients and obtained a general physician's evaluation of the viability of claims given the medical literature; 2) he evaluated whether to file any civil actions based on the investment his small firm would have to make to pursue them; 3) he reviewed available published information concerning the drug, the recall and potential side effects (including FDA information, the Actavis press release, consumer drug information on-line and newspaper articles); 4) the press release and recall notice specifically described the symptoms that could be experienced upon ingestion of the adulterated drug and many of the noted symptoms are immediate physical problems that could be established by personal knowledge and belief and confirmed by potential clients or their representatives; 5) Mr. Wood established with every

potential client that they were in fact prescribed the recalled Digitek, experienced at least one of the noted symptoms (considered this as a "threshold injury") and also suffered economically through the purchase of an adulterated product; 6) each client where an action was pursued also had additional claims of associated anxiety and emotional distress from possibly having been prescribed an over-strength drug; 7) time with potential clients was blocked for at least 2 hours initially and in each case almost always resulted in a second or third conference; 8) Mr. Wood established each client's knowledge of this litigation and mass torts generally to eliminate potential clients who were potentially jumping on the "drug recall of the month bandwagon;" and 9) Mr. Wood's firm did both a general health history as well as a more specific heart history[3] as to how the client came to be prescribed the drug and what specific symptoms they suffered.  Lastly, as to the Requests for Admission, Mr. Wood testified that not responding, and the answers thus being deemed admitted, was a purposeful, strategic decision.  His apparent goal, given that he did not have an active part in objecting to the requests for admission up front during the prior hearing process, was to be given a chance to personally make his case to the court as to why they were objectionable.  The court notes that given this somewhat unique strategy, the subsequent series of deficiency letters sent by the defendants to Mr. Wood, and his supplemental responses and on-going production of information - it is even more unclear as to what pharmacy and medical records Mr. Wood possessed and at what time in the process he possessed them.

---

[3] The court notes that this fact is not supported by the initial PFS filings made by Mr. Wood in each case which are essentially devoid of any of this information on a general or specific level. Mr. Wood has, however, subsequently supplemented those materials and provided records in response to discovery requests.

II. Analysis

Federal Rule of Civil Procedure 11(b) provides as follows:

By presenting to the court a pleading . . . or other paper--whether by signing, filing, submitting, or later advocating it--an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . ."

Fed. R. Civ. P. 11(b)(3). Sanctions are available against those who breach Rule 11(b)(3):

If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.

Fed. R. Civ. P. 11(c)(1).

Rule 11 allows for the imposition of sanctions in instances where a court is confronted with "a complaint containing allegations unsupported by *any* information obtained prior to filing, or allegations based on information which minimal factual inquiry would disprove . . . .". *In re Kunstler*, 914 F.2d 505, 516 (4th Cir. 1990)(emphasis added). Rule 11 also permits a district court to sanction a party or lawyer for insisting on a position after it is no longer tenable. *Morris v. Wachovia Securities, Inc.*, 448 F.3d 268, 279 (4th Cir. 2006).

I note for future reference and caution Mr. Wood for his lack of timely responses at certain junctures in these civil actions. Nevertheless, I find that Mr. Wood has exhibited a measure of pre-filing diligence in these cases that weighs against a sanctions award. More importantly, the substance of the motion for Rule 11 sanctions relies heavily on arguments that Mr. Wood did not have at the time of the filing of the complaints evidence that the plaintiffs' Digitek had an elevated dosage of digoxin, or that the plaintiffs suffered from digoxin toxicity. I

find, as I have consistently in other cases, that imposing a bright line, prefiling standard requiring evidence of causation in defense of a Rule 11 motion would in effect require counsel to secure the type of proof necessary to withstand a motion for summary judgment.  Such a purpose was not contemplated by Rule 11.  I decline at this juncture, in the context of a sanctions motion no less, to set the final boundary markers for what will no doubt prove to be a factually intensive determination guided by expert opinions and a thorough analysis of the law. Advisory Committee Notes on Rule 11 provide guidance on this point:

> [Rule 11 motions] should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes.  Nor should Rule 11 motions be prepared to emphasize the merits of a party's position,... [or] to intimidate an adversary into withdrawing contentions that are fairly debatable. . . .

Fed. R. Civ. P. 11, Advisory Committee Notes.

Also significant in considering the imposition of sanctions here is that PTO 39 postdated the filing of these complaints.  While the spirit and message of PTO 39 certainly applies to all civil actions in MDL 1968, as a practical matter, what occurred or did not occur as part of the pre-filing investigation in the present civil actions must be evaluated and focused on the circumstances that existed at the time the complaints were filed. For the defendants to rely on PTO 39 to support their position that plaintiff's counsel must have had certain causation documentation in hand prior to filing the complaints at issue relies on the wisdom of hindsight and should be avoided.

As evidenced by the affidavit for fees and expenses, the defendants have expended a

considerable amount of time and resources to file and pursue these Rule 11 motions. While I do not endorse the tactics of Mr. Wood with regard to the Requests for Admission and I am dismayed by his complete lack of response during this process[4], the bottom line is that I am unable to conclude that he has contravened Rule 11. Further, I do not find the substance of the defendant's Rule 11 sanctions motion predicated on the lack of specific causation evidence at the time of filing to be persuasive or proper.

For all of the foregoing reasons, I hereby **DENY** the motion for sanctions in each of the above civil actions.

The court **DIRECTS** the Clerk to send a copy of this written opinion and order to counsel of record and any unrepresented party.

ENTER: April 13, 2010

Joseph R. Goodwin, Chief Judge

---

[4] I advise Mr. Wood to read carefully Federal Rule of Civil Procedure Rule 16(f) which authorizes the occur to issue just orders for sanctions for failure to obey pretrial orders.